## CANADA SHIPPING Co. *v.* ACER and others.[1]

*(District Court, S. D. New York. February 22, 1886.)*

CHARTER-PARTY — MEMORANDUM — CONSTRUCTION — SPECIFIED VOYAGES — "INTENDED TO LOAD."

Respondents contracted by charter to ship, during the season, a specified number of cattle by each of the steamers of the Beaver Line. Accompanying the contract was a memorandum of the intended sailings, stating the vessels, the expected date of each voyage, and the number of cattle to be shipped on each, in which memorandum these words also appeared: "This contract to

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

include all steamers of the Beaver Line intended to load at New York this season." The respondent shipped the full number of cattle upon each of the voyages specified in the memorandum. Shortly before the end of the season, without the consent of respondents, another voyage was added by the agents of the line, who notified respondents that they would be expected to load this vessel also under the contract, which respondents refused to do. On suit brought against them for breach of contract, *held*, that the words "all steamers intended to load" meant "intended at the time when the contract was made;" that the extra voyage was not then contemplated; and that the contract could not subsequently be enlarged beyond the scope of the memorandum, without the consent of respondents.

In Admiralty.

*Ullo, Ruebsamen & Hubbe*, for libelants.

*Wm. B. H. Dowse*, for respondents.

BROWN, J. The libelants are the owners of the line of steam-ships known as the "Beaver Line," running in summer between Montreal and Liverpool, and during the winter months between Liverpool and New York. On the tenth of February, 1883, Seager Bros., agents of the line in New York, made a contract with the respondents, composing the firm of C. M. Acer & Co., by means of a letter and an answer, the material parts of which are as follows: The libelants offered "to freight from the port of New York to the port of Liverpool, by steamers of Beaver Line intended to be dispatched about as per memorandum attached, [blank] head of cattle, at the rate of £4 sterling per head." Attached to this offer was the following memorandum:

| "MEMO. OF INTENDED SAILINGS OF BEAVER LINE. | | | | Cattle. | |
|---|---|---|---|---|---|
| Lake Winnipeg, about third March, | - | - | - | - | 239 head. |
| Lake Manitoba, about thirteenth March, | - | - | - | 239 | " |
| Lake Champlain, about twenty-first March, | - | - | - | 136 | " |
| Lake Huron, about third April, | - | - | - | - | 136 | " |
| Lake Nepigon, about fourteenth April, | - | - | - | - | 136 | " |
| Lake Winnipeg, about twenty-fourth April, | - | - | 239 | " |

"This contract to include all steamers of Beaver Line intended to load at New York this season.

[Sd.] "SEAGER BROS., Agents.

"We accept the above offer, and hereby agree and bind ourselves to ship the specified number of animals, on the terms and conditions there stated.

[Sd.] "C. M. ACER & Co."

When this contract was made, the respondents, referring to the memorandum of the steamers and number of animals, inquired of Seager Bros., "Is that all?" to which the answer was given, "It is." The respondents thereafter furnished the cattle for all of the steamers named in the above memorandum to the full number specified, and paid for them according to the contract. After four or five of said steamers had been loaded and dispatched, and some time prior to the sixteenth of April, 1883, another voyage of the steam-ship Manitoba was added by Seager Bros. to the above list, without the assent of the respondents, and the latter were notified by Seager Bros. that the

Manitoba would sail on the twenty-third of April, and that the respondents would be expected to load her under the contract. This would be on the day previous to the last specified voyage of the Winnipeg. The respondents immediately notified Seager Bros. that they should not load the Manitoba for the twenty-third of April, claiming that it was not within the contract, and they did not load her. This libel was filed to recover damages for this refusal.

The case turns upon the construction of the written contract, and the right of the libelants to add another voyage to the trips specified in the memorandum. The memorandum, being referred to in the contract, is as much a part of it as though it were inserted in the body of the contract itself. The libelants rest upon the final clause of the memorandum: "This contract to include all steamers of Beaver Line intended to load at New York this season." They claim that the effect of this is to bind the respondents to load all such steamers as the libelants might choose to dispatch to Liverpool during the season. If that is the effect of the contract, the respondents are liable. But, upon the other facts above stated, I am of the opinion that this is not the legal meaning or effect of the contract. Even the literal meaning of the clause just quoted fails to sustain the libelants' contention. At most, it includes only the steamers of the Beaver Line *intended* to load at New York. The word "intended" must mean "intended at the time the contract was delivered." It cannot reasonably be supposed that the intention of the parties was that the contract could be materially enlarged or restricted by the indefinite future changes of intention by one party, without the other's assent, at any time up to the close of the season. The list furnished is expressed to be a "memorandum of intended sailings;" and it specifes the vessels, the dates, and the head of cattle required on each voyage; and that memorandum, with the statement that "this is all," fixes positively just what was intended at that time. It was incompetent, therefore, for the libelants to insert, some two months afterwards, an additional voyage, and thus enlarge the obligations of the contract without the respondents' assent. That voyage was clearly not among those intended when the contract was signed.

Again, the agreement signed by the respondents is expressly to ship a "specified number of animals." The number of animals was exactly specified in the memorandum attached to the contract, and the respondents have exactly fulfilled it. To add another vessel to the list is a material enlargement of the specific number, and, as it seems to me, altogether beyond the intent of the writing to give the contract definiteness and precision.

Had the clause relied on by the libelants been actually designed to give them the right to add to the list of voyages, and to increase the number of cattle required to be furnished, the language of the clause would naturally have been quite different from what it is, and would have stated more clearly such an intention. The clause as it stands,

coupled with the verbal statement and the list of voyages, is in effect a representation that the contract as made, and the list attached, do include "all the *steamers* intended to load" during the season. The statement was correct. The Manitoba was one of the steamers intended to be loaded. She had made one voyage on March 13th, for which the respondents had furnished the stipulated head of cattle. The clause referred to, so far as respects the Manitoba, was fulfilled literally. The libelants undertook to make with that steamer an additional voyage not included in the list, and thereby to extend the number of animals to be shipped beyond that specified, although the steamer had already made the voyage specified, and had been supplied with the number of animals agreed on. This, in my judgment, was outside of the contract, as well as contrary to the intention of the parties; and the libel must therefore be dismissed, with costs.